IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| HENRY J. THOMPSON, ) | Civil Action No. 3:05-3594-PMD-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On January 27, 2003, Plaintiff applied for SSI, and he applied for DIB on February 4, 2003. Plaintiff's applications were denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held October 26, 2004, at which Plaintiff appeared and testified, the ALJ issued a decision dated February 15, 2005, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was fifty-one years old at the time of the ALJ's decision. He has a high school education and past relevant work as a drywall installer and delivery driver. Plaintiff alleges disability since June 15, 2001, due to lupus, osteoarthritis and hepatitis C.

The ALJ found (Tr. 25-26):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's discoid lupus and osteoarthritis are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to: sit, stand and walk each for 6 hours of an 8 hour day; frequently lift/carry 10 pounds; occasionally lift 20 pounds; never climb, crawl, balance, kneel, or perform constant fine/gross manipulation; perform no more than occasional overhead reaching; and have no extended exposure to sunlight. He would also require a sit/stand option at will and the use of a cane while walking or standing.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is an "individual closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as: a storage facility clerk (This is light, unskilled work with 227,000 jobs existing in the national economy (D.O.T. #295.367-026)); a parking lot attendant (This is light, unskilled work with 1l3,639 jobs existing in the national economy (D.O.T. 9l5.473-010)): or a carton packer (This is light, unskilled work with 275,000 jobs existing in the national economy (D.O.T #920.665-010)).

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.520(g) and 415.920(g)).

On November 25, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on December 28, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **DISCUSSION**

Plaintiff was first diagnosed with lupus in 1997. On June 12, 2000, he was treated by Dr. Kathy Schwarzenberger, a dermatologist. Dr. Schwarzenberger reported that Plaintiff was doing fairly well, his skin lupus was stable, and he had not kept his scheduled follow-up appointments. Plaintiff reported that he had been lax in his use of topical corticosteroids and had not been using sun screen. Tr. 181,184.

On February 27, 2001, Plaintiff presented to the Rheumatology and Immunology Department of the Medical Center of the Medical University of South Carolina ("MUSC") in Charleston, South Carolina, with complaints of right hip and left knee pain. X-rays of Plaintiff's left knee and right hip indicated osteoarthritic changes. Laboratory tests indicated a normal sedimentation rate and a negative ANA factor. Dr. Edwin Smith, a rheumatologist, stated that he did not believe that Plaintiff had any evidence of inflammatory arthritis associated with his discoid lupus, but appeared to have osteoarthritis likely related to his occupation. Tr. 171-175.

Plaintiff was examined by Dr. Adrian Reuben on May 29, 2001, for an opinion about his hepatitis C. Dr. Reuben noted that Plaintiff had not kept any of his follow-up appointments, Plaintiff admitted to drinking a couple of beers daily, and Plaintiff smelled strongly of alcohol. He opined that it was inadvisable to treat Plaintiff's hepatitis C with interferon-based therapy partly because of Plaintiff's apparently heavy alcohol use, the chance the interferon might exacerbate Plaintiff's arthritis, and because Plaintiff had not tolerated interferon-based therapy in the past. Tr. 169-170. A June 15, 2001 MRI of Plaintiff's left knee revealed a tear of his medial meniscus and mild spurring of his medial femur, compatible with osteoarthritis. Tr. 164. Plaintiff complained of left knee pain at MUSC's Ambulatory Care Clinic on June 20, 2001. He reported he was not working

secondary to knee pain and that Mobic, a non-steroidal anti-inflammatory drug, helped his pain. Tr. 162.

On July 3, 2001, Dr. Smith completed a disability insurance claim form for a private insurer on behalf of Plaintiff. He reported that Plaintiff had been diagnosed with osteoarthritis of the hip and knee as well as a meniscus tear, and Plaintiff had been unable to work since April 23, 2001. Tr. 97.[1] On September 19, 2001, H. Del Schutte, an orthopaedist, stated that he believed that Plaintiff had meniscal pathology and recommended surgery. Tr. 160. Plaintiff underwent arthroscopic surgery to repair his torn meniscus on September 24, 2001. Tr. 158. On November 28, 2001, Dr. Schutte noted that Plaintiff had full range of motion of his left knee, was able to walk without any pain or limp, and was doing great. Tr. 157.

On February 11, 2002, Dr. Schwarzenberger noted that Plaintiff's lupus had been doing fairly well, most of his trunk and extremities remained fairly clear, and he had alcohol on his breath. Dr. Schwarzenberger strongly suggested that Plaintiff discontinue his alcohol consumption and offered to help him look into alternative work that would allow him to stay out of the sun. Tr. 156.

On April 17, 2002, Plaintiff complained to Dr. Smith of a popping sensation and weakness in his left knee. Examination revealed crepitus in Plaintiff's knees, greater on the left than on the right. Dr. Smith prescribed Bextra, a non-steroidal anti-inflammatory, and Zanaflex, a muscle relaxant. Tr. 155.

---

[1] The ALJ discounted this opinion of disability, as it was without substantial support from the other objective evidence of record, Plaintiff underwent successful arthroscopic surgery after the opinion was rendered, and Dr. Smith failed to place any further restrictions on Plaintiff's activities after the surgery. Tr. 21. Plaintiff has not challenged this determination. Further, after the ALJ's decision, Plaintiff submitted additional medical records, including a letter from Dr. Smith dated July 8, 2003, in which he merely stated that Plaintiff's osteoarthritis limited Plaintiff's ability to lift and walk for prolonged periods and his lupus precluded sun exposure. Tr. 237.

5

On June 4, 2002, Plaintiff was taken to MUSC's emergency room. He was assessed with alcohol and heroin abuse and hypokalemia (decreased level of serum potassium) and advised to seek further treatment at the Charleston County Detoxification Center. Tr. 100-101, 106. Plaintiff was treated at the Charleston Memorial Hospital emergency room on July 30, 2002, with complaints of right shoulder pain. He reported drinking a six pack a day. Examination revealed normal upper and lower extremity strength, normal reflexes, and intact sensations. Tylenol was prescribed for pain. Tr. 114-116. On August 4, 2002, Plaintiff was hospitalized with a history of melanic stool. Hospital records reflect that his blood alcohol level was .198. Upon discharge, Plaintiff was advised to stop drinking alcohol. Tr. 124, 128. On May 13, 2003, Plaintiff returned to MUSC complaining of back, left knee, and right hip pain. He reported that Tylenol and Mobic helped a little. Examination revealed decreased rotation of Plaintiff's right hip and crepitus of his knees. Tr. 151-152.

Plaintiff was examined by Dr. Marvin Murdaugh, a family practitioner, on May 14, 2003. Plaintiff reported that he had significant pain if he walked more than four or five blocks. He reported drinking two to three beers a day and denied illegal drug use. Examination revealed that Plaintiff did not use an ambulatory device, had no difficulty getting to the examining table, had good grip strength, and had no definite weakness. Plaintiff also was noted to have normal straight leg raising; tenderness of his lumbar spine; full range of motion of all joints; generalized tenderness of his knees, ankles, and right wrist; and no significant synovial thickening. Tr. 130-133.

On July 8, 2003, Plaintiff was treated at the MUSC Rheumatology and Immunology clinic. He complained of pain in his knee and an increase in his skin disease. Examination revealed some hypopigmentation, decreased motion of his right hip, and crepitus of his knees. He was assessed with lupus and chronic, stable osteoarthritis of the right hip and left knee. Tr. 146-147. On November 18, 2003, Plaintiff complained of right hip pain and fatigue. Examination at MUSC

revealed decreased range of motion of his right hip, crepitus of his left knee, and healed discoid lesions. Plaintiff was assessed with osteoarthritis and prescribed a cane and analgesic cream. Tr. 144-145.

Plaintiff alleges that: (1) the Commissioner erred in discounting Plaintiff's credibility when he has proven medical impairments that can reasonably be expected to produce his symptoms; and (2) the claim should be awarded at least as of Plaintiff's fiftieth birthday under Grid Rule 201.14. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

    A.    <u>Substantial Evidence</u>

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence. The Commissioner contends that the ALJ's decision is supported by substantial evidence. Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984); <u>Laws v. Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's decision that Plaintiff can perform a limited range of light work is supported by substantial evidence. Although Plaintiff suffers from the severe impairment of discoid (skin) lupus, physical examinations revealed that he was doing fairly well and his lupus was stable. Tr. 156, 184. Plaintiff has not received any consistent ongoing treatment for his lupus, no physician imposed any restrictions on his activities as to his lupus except that he stay out of the sun, and no physician opined that he was disabled from lupus. See <u>Lee v. Sullivan</u>, 945 F.2d 687, 693 (4th Cir.

7

1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)(treating physician's opinion entitled to great weight).

Although Plaintiff suffers from osteoarthritis, with decreased rotation of his right hip and tenderness and crepitus of his knees (Tr. 132, 145, 147, 152), the record reflects that he had full range of motion of his knees, normal lower extremity strength, normal reflexes, intact sensations, full range of motion of all his joints, and no significant synovial thickening (Tr. 115, 132, 157). Further, Plaintiff stated that Tylenol and Mobic helped ease his pain (Tr. 151), and his osteoarthritis was treated in a conservative manner. See, e.g., Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)(conservative treatment was not consistent with an allegation of disability).

The ALJ's determination that Plaintiff had the physical residual functional capacity ("RFC") to perform at least a limited range of light work is also supported by the findings of State agency medical consultants. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On June 4, 2003, a State agency medical consultant reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment form, opining that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. 134-141. On March 8, 2004, Dr. Joseph Gonzalez reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment form. Dr. Gonzalez opined that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-

five pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. 194-201.

    B.    Credibility

Plaintiff alleges that the ALJ erred in discounting Plaintiff's credibility when he has proven medical impairments that can reasonably be expected to produce his symptoms. The Commissioner contends that the ALJ properly considered all of the evidence of record and properly concluded that Plaintiff's testimony was not entirely credible concerning the severity of his symptoms and the extent of his limitations.

In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered the medical and non-medical evidence in making his credibility determination.[2] As discussed above, the ALJ's decision is supported by the medical record, including objective medical tests. Plaintiff was not undergoing any consistent significant treatment for his lupus. For significant periods of time, Plaintiff did not take any medication or only over-the-counter medication for his alleged disabling arthritic pain. See, e.g., Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (expressing approval of ALJ's consideration of a plaintiff's lack of strong pain medication); see also 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").

The record also reflects that Plaintiff failed to keep follow-up medical appointments, was non-compliant with the use of topical corticosteroids and sun screen and continued to drink alcohol despite admonishments to quit drinking. Tr. 128, 156, 181, 184. A failure to follow prescribed treatment may bring the claimant's motivation into question and may support a decision to deny

---

[2]Plaintiff alleges that the ALJ "recites the factors" concerning credibility, but does not apply them. Review of the decision, however, reveals that the ALJ specifically found that Plaintiff's testimony was not entirely credible based on: (1) Plaintiff's daily activities; (2) inconsistencies in the record regarding Plaintiff's treatment for hepatitis C; (3) the failure of the physicians' notes to reveal the type of significant clinical and laboratory abnormalities one would expect if Plaintiff were actually disabled; (4) Plaintiff's inconsistencies in taking medications for his conditions; (5) Plaintiff's testimony that he would need hip surgery which is not indicated in the medical record; (6) Plaintiff's failure to follow up on recommendations that Plaintiff abstain from alcohol and seek treatment; (7) medical records indicating that Plaintiff's arthroscopic surgery was successful; (8) significant periods where Plaintiff took no prescription medications for his allegedly disabling symptoms; (9) the offer of Plaintiff's treating dermatologist to help him look for work; (10) Plaintiff's complaints at the hearing which were significantly more severe than those described in the medical record; and (11) the fact that Plaintiff engaged in work after his alleged onset date. Tr. 20-21. Although, as admitted by the Commissioner, Plaintiff's testimony concerning limited daily activities does not appear to support the ALJ's decision, the ALJ's decision is supported by the numerous reasons discussed above.

benefits. English v. Shalala, 10 F.3d 1080, 1083-1084 (4th Cir. 1993); see also Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993); 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled..."); see also Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)(ALJ may consider a claimant's failure to follow treatment advice as a factor in assessing claimant's credibility); Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995)(when assessing credibility, the ALJ may properly consider a claimant's failure to keep appointments).

Inconsistencies in the record also undermine Plaintiff's credibility. Plaintiff testified at the hearing that he had not worked at all since June 2001 (Tr. 270), however, in his "Disability Report" and "Work Activity Report," he stated that he did not stop working until April 15, 2002 (Tr. 56, 70). Plaintiff reported to Dr. Schwarzenberger that arthroscopic surgery on his left knee had not helped significantly (Tr. 156). Dr. Schutte's treatment notes reflect that, following surgery, Plaintiff had full range of motion on his left knee and was able to walk without any pain or limp. Tr. 157. Dr. Murdaugh noted that Plaintiff reported not receiving hepatitis C treatment because it interfered with his lupus treatment. Tr. 131. At the hearing and on his disability application, Plaintiff implied that he was not receiving hepatitis treatment because of a lack of funds. Tr. 50, 282. Plaintiff, however, only visited his liver physician, Dr. Reuben, on one occasion after his alleged onset date, at which time Dr. Reuben opined that it was inadvisable to treat Plaintiff's hepatitis C with interferon-based therapy partly because of Plaintiff's heavy alcohol use as well as the chance the treatment might exacerbate Plaintiff's arthritis and Plaintiff's history of not tolerating interferon-based therapy in the past. Tr. 169-170. At the October 2004 hearing, Plaintiff testified that he was going to need hip surgery on both sides because his joints were getting worse. Tr. 273-274. The record, however, does not reference any need for surgery. Plaintiff testified at the hearing that he could not open a

11

jar or hold more than a glass of water. Tr. 175. Physical examinations in July 2002 and May 2003, however, released normal upper extremity strength and good grip strength with no definite weakness. Tr. 115, 132. Plaintiff testified that his medication made him "woozy" and caused him to sleep. Tr. 282-283. There is, however, no evidence in the record that he ever mentioned these side effects to any of his physicians, treatment notes do not corroborate any serious functional limitations from his medication side effects, and Plaintiff never attempted to have his medication changed to alleviate the alleged side effects (see Chamberlain v. Shalala, 47 F.3d 1489 (8th Cir. 1995)).

      C.      Grid Rule 201.14

Plaintiff contends that he should be found disabled after the age of fifty under the medical-vocational guidelines ("Grids"). Rule 201.14 provides for a finding of disability for a claimant who is limited to sedentary work, closely approaching advanced age, has a high school education or more, and has skilled or semi-skilled skills that are not transferable. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14. As discussed above, however, the ALJ's decision that Plaintiff could perform a range of light work is supported by substantial evidence. Thus, Grid Rule 201.14 is not applicable and the ALJ did not err by not applying this rule.

Further, the ALJ did not rely on the Grids (merely using them as a framework for the decision - Tr. 23), and instead obtained testimony from a VE. The ALJ asked the VE to consider a claimant of the same age, work, and educational background as Plaintiff who had the exertional capacity for unskilled, light work with no climbing, crawling, balancing, or kneeling; no constant, fine or gross manipulation; no more than occasional overhead reaching; a sit and stand option at will with the flexibility to use his cane while walking or standing; and no extended exposure to sunlight.

12

In response, the ALJ identified the jobs of storage facility clerk, parking lot attendant, and carton packer which Plaintiff could perform in significant numbers.  Tr. 285-286.

## CONCLUSION

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence.  This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra.  Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.  Shively v. Heckler, supra.  It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

January 24, 2007
Columbia, South Carolina